# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| NAJAE ENOS, | ) |
| | ) |
| Plaintiff(s), | ) CIVIL ACTION NO.: 1:25-cv-20027 |
| | ) |
| v. | ) |
| | ) |
| PURE OASIS, LLC, | ) |
| | ) |
| Defendant(s). | ) |

## COMPLAINT and DEMAND FOR JURY TRIAL

Plaintiff, Najae Enos ("Plaintiff"), hereby brings this Complaint and Demand for Jury Trial against Defendant, Pure Oasis, LLC ("Defendant"), and alleges as follows:

## NATURE OF THE CLAIM

1. This action seeks compensatory damages, declaratory relief, injunctive relief, and any other permissible legal damages for Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq.* ("Title VII").

2. Plaintiff alleges that Defendant unlawfully discriminated against her on the basis of national origin, race, and/or sex, and retaliated against Plaintiff as described below.

## THE PARTIES

3. Plaintiff is a Black female of Cape Verdean national origin, who has been employed by Defendant since approximately July 2023.

4. Defendant, Pure Oasis, LLC, is a recreational cannabis dispensary, organized under the laws of the State of Massachusetts with its principal place of business in Boston, Massachusetts. Defendant operates 2 dispensaries with approximately 80 employees.

5. At all times material hereto, Defendant had at least fifteen employees and was therefore an "employer" within the meaning of Title VII.

## JURISDICTION and VENUE

6. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1331, as it arises under questions involving Title VII. This Court also has diversity jurisdiction under 28 U.S.C. §1332(a) insofar as the amount in controversy exceeds $75,000, exclusive of interests and costs, and Defendant is a foreign corporation organized under the laws of the State of Massachusetts with its principal place of business in Boston, Massachusetts, while Plaintiff is a Florida resident.

7. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §48.193(1)(a)(1), (2), and (6), because it conducts business in this District, some of the actions giving rise to the Complaint took place in this District, Plaintiff's claims arise out of Defendant's operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, and/or Defendant caused injury to persons within this District while Defendant was engaged in solicitation of service activities within this District and/or products, materials, or things serviced by Defendant were used and/or consumed within this District.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District and the Defendant has caused harm to Plaintiff residing in this District.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9. Plaintiff timely filed a charge of discrimination with the EEOC alleging discrimination and retaliation by Defendant and was subsequently issued a Notice of Right to Sue, dated October 7, 2024.

10. Plaintiff timely filed this action within the 90-day period contained in the Notice of Right to Sue.

11. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**FACTUAL ALLEGATIONS**

12. Plaintiff was hired by Defendant on or about July 2023, as a Human Resources Generalist for the Pure Oasis store located at 430 Blue Hill Avenue, Boston, MA 02121 ("Dorchester") and the Pure Oasis store located at 85 Devonshire Street, Boston, MA 02109 ("Downtown").

13. From July 2023 and through the winter of 2024, Plaintiff was on a hybrid/remote work schedule, with three (3) days in-office and two (2) days remote.

14. Until her retaliatory termination, Plaintiff held the same position with Defendant and worked a hybrid/remote schedule.

15. On or about February 2024, Plaintiff communicated to Greg Dahl, Defendant's Director of Operations ("Mr. Dahl"), that due to her uncle's cancer diagnosis, she would need to relocate to Miami, Florida.

16. Mr. Dahl, with the support of Mr. Kobie Evans, Defendant's Chief Executive Officer ("Mr. Evans") and the rest of Defendant's owners and directors, agreed upon a remote

work schedule that included Plaintiff's permanent relocation to Miami, Florida, and planned travel in person to the Dorchester and Downtown locations.

17. Mr. Dahl told Plaintiff that her new schedule would require travel to Boston to work in Defendant's Dorchester location for approximately ten (10) days out of the month, and the remaining days Plaintiff could work remotely.

18. Prior to the new work schedule, Plaintiff would work three days on-site and two days remotely per week, which amounts to approximately twelve (12) in-office days per month. Oftentimes, Mr. Dahl would allow Plaintiff to work remotely even on days she was supposed to be onsite, especially when there was poor weather, no in-office meetings, or other work that required Plaintiff to be onsite.

19. On days Plaintiff was scheduled to work on-site, she would be in-office from 10:00 A.M. until 3:00 P.M., and work remotely until 5:00 P.M.

20. After her new work schedule was confirmed in writing by the Defendant, Plaintiff moved to Miami, Florida.

21. On April 2, 2024, Plaintiff executed a 1-year lease for an apartment in Miami, Florida.

22. Plaintiff continued to work onsite at the Dorchester and Downtown locations through April 4, 2024.

23. Plaintiff's first trip to work onsite was from April 23, 2024, through April 28, 2024, totaling ten (10) days on-site in the month of April.

24. Due to time constraints from the initial relocation and her uncle's treatment, Plaintiff's second trip to Boston was from May 22, 2024, through May 29, 2024.

25. During this trip and the April work trip, Plaintiff would be onsite at either the Dorchester or Downtown location from 9:00 A.M. through 5:00 P.M.

26. Shortly after Plaintiff's last in-office trip in May 2024, Mr. Dahl advised her that seven (7) days in-office would be sufficient, and she could work the remainder of the month remotely.

27. During the month of June 2024, Plaintiff diligently worked in-office for the required time and performed the remainder of her work remotely, in accordance with the schedule given to her by Defendant.

28. Plaintiff received overall positive performance reviews from Defendant during the months of April, May, and June, 2024.

29. Then suddenly and without warning on July 2, 2024, Mr. Dahl advised Plaintiff, that if she did not relocate back to Massachusetts immediately, she would be terminated.

30. Plaintiff asked Mr. Dahl if there were any problems or negative feedback regarding her performance when she was working the agreed-upon hybrid schedule.

31. Mr. Dahl affirmed that all Plaintiff's performance reviews during April, May, and June were positive.

32. Plaintiff then inquired why suddenly the Defendant needed her to return to Boston and work fully in-office. Especially since Plaintiff's role with the Defendant was that of Human Resources Generalist, which is a position that can be performed fully remotely.

33. Mr. Dahl stated that all employees were going to be required to work in-office starting July 2024.

34. Despite this assertion, there were several other employees working for Defendant that still had a remote/hybrid work schedule.

35. For example, Defendant's Marketing Director, Julie, was still permitted to work remotely.

36. Julie is of United States national origin and is Caucasian.

37. Defendant's Inventory Manager, Joe, who is a Caucasian male of United States national origin, was also permitted to work remotely.

38. Upon information and belief, Defendant's other employees were still permitted to work remotely.

39. Plaintiff reminded Mr. Dahl that, based on Defendant's prior agreement that Plaintiff could work a hybrid schedule, Plaintiff had already committed to a year lease.

40. Mr. Dahl stated that he did not care and would not offer any type of assistance to break the lease.

41. Plaintiff voiced her frustration that the only reason she even signed the lease was because Defendant agreed to that she could move to Florida and work in-office only ten (10) days a month.

42. Mr. Dahl once again affirmed that this was Defendant's policy for all employees, and if she did not return to fully in-office by the end of the month, she would be terminated.

43. Defendant knew that Plaintiff would not be able to afford to break the lease, nor would she be able to pay for two homes.

44. Plaintiff was terminated on July 31, 2024.

45. Plaintiff was not terminated for poor performance or negative employee evaluations, but on account of her national origin, race, and/or sex, in direction violation of Title VII by Defendant.

46. Defendant and its employees, agents, and/or contractors manufactured the idea that all employees needed to return to full in-office work in order to have an excuse to fire Plaintiff in retaliation and on account of her national origin, race, and/or sex, in direction violation of Title VII.

47. In actuality, Defendant was going to terminate over fifty (50) percent of its staff, and in direction violation of Title VII, gave preference to employees that were male, white, and/or those born in the United States.

48. Defendant terminated Plaintiff on account of her national origin, race, and/or sex, in direction violation of Title VII by Defendant.

49. Defendant is liable for the acts and conduct of its employees, agents, and/or contractors.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
National Origin Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

50. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 41, above.

51. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their national origin.

52. As alleged above, Plaintiff was discriminated against by Defendant on the basis of national origin.

53. Defendant deprived Plaintiff of employment opportunities on the basis of her national origin.

54. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained,

and will continue to sustain economic and emotional injuries, resulting in damages in an amount to be proven at trial.

55. As such, Plaintiff further seeks front-pay, back-pay, lost wages, any compensatory damages, and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

56. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

## SECOND CLAIM FOR RELIEF
Race Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

57. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 41, above.

58. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their race.

59. As alleged above, Plaintiff was discriminated against by Defendant on the basis of race.

60. Defendant deprived Plaintiff of employment opportunities on the basis of her race.

61. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain economic and emotional injuries, resulting in damages in an amount to be proven at trial.

62. As such, Plaintiff further seeks front-pay, back-pay, lost wages, any compensatory damages, and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

63. Plaintiff is entitled to their reasonable attorneys' fees and costs incurred in the

prosecution of this action.

### THIRD CLAIM FOR RELIEF
Sex Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a),

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 23, above.

65. Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

66. Defendant discriminated against Plaintiff by treating them differently from her male coworkers, including in employment opportunities, hybrid/remote work schedule, unequal wages, and compensation, because of her sex.

67. Plaintiff's sex was the determining factor and/or a motivating factor in Defendant's actions.

68. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain economic and emotional injuries, resulting in damages in an amount to be proven at trial.

69. As such, Plaintiff further seeks front-pay, back-pay, lost wages, any compensatory damages, and all other injunctive, declaratory, and monetary relief available for discrimination at

trial.

70. Plaintiff is entitled to their reasonable attorneys' fees and costs incurred in the prosecution of this action.

## DECLARATORY RELIEF ALLEGATIONS

71. A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties. Plaintiff contends that Defendant violated her rights under Title VII. Plaintiff is informed and believes and thereon alleges that the Defendant will deny these allegations. Declaratory relief is therefore necessary and appropriate.

72. Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## INJUNCTIVE RELIEF ALLEGATIONS

73. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

74. If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

  A. For a declaration that Defendant's actions, policies, and practices as alleged herein are unlawful;

  B. For lost wages, front-pay, back-pay, and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;

  C. For compensatory damages for Plaintiff, including but not limited to, emotional pain and suffering, in an amount to be proven at trial;

  D. For liquidated damages;

E. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

F. For an order enjoining Defendant from engaging in the unlawful acts complained of herein;

G. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), and other laws; and

H. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: January 3, 2025.

Respectfully submitted,

**THE G LAW GROUP, P.A.**
*Attorneys for the Plaintiff*
1501 Biscayne Blvd., Suite 501
Miami, FL 33132
Tel: (305) 709-8877
Fax: (786) 460-8333
sgenadiev@theglawgroup.com

By: */s/ Simeon G. Genadiev*
**SIMEON G. GENADIEV, ESQ.**
Florida Bar No.: 100918